**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**MARY MORRIS** — **PLAINTIFF**

**VERSUS** — **CAUSE NO. 2:07cv275KS-MTP**

**ADVENTIST HEALTH CENTER AND ROYAL INDEMNITY COMPANY** — **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Remand filed on behalf of the plaintiff **[#4]**. The court, having reviewed the motion, the response, the pleadings and exhibits on file and being fully advised in the premises is of the opinion that the motion is not well taken and should be denied. The court specifically finds as follows:

This case originated as a workers' compensation claim before the Mississippi Workers' Compensation Commission (MWCC). The plaintiff, who was a floor nurse for defendant Adventist, was injured on the job on or about November 29, 2002, and filed a workers' compensation claim. She filed a Petition to Controvert her claim on January 21, 2003. Thereafter, the plaintiff was paid temporary total disability benefits for approximately four (4) years based on her average weekly wage. The Employer and Carrier paid for her medical bills, hospital bills, surgery, prescriptions and mileage incurred seeking treatment, all as required by the Mississippi Workers' Compensation laws.

After the plaintiff reached maximum medical improvement, her counsel and

counsel for defendant Royal Indemnity, who provided workers' compensation coverage for Adventist, entered into settlement negotiations to resolve the compensation issues related to the plaintiff's permanent injuries. As a result of those negotiations, Royal Indemnity offered to settle the plaintiff's claim for $102,239.29, contingent upon a Medicare set-aside of $70,052.45. The set-aside amount was based upon an analysis performed by First Priority Health Services, a private company under contract to Royal.

Plaintiff's counsel rejected the offer based on the size of the projected set-aside amount. Thereafter, counsel for both parties agreed to prepare a Petition for Approval of Final Compromise Settlement (known as a "9(i)" before the MWCC but not for immediate submission to the Commission. This was done so that the proposed settlement could be submitted to the Centers for Medicare and Medicaid Services (CMS), the official contractor designated by Medicare to make set-aside decisions, in order to secure an official analysis of the required set-aside amount.

The 9(i), i.e., the proposed settlement, was presented to CMS on January 29, 2007. On or about May 1, 2007, counsel for the plaintiff forwarded to defense counsel a copy of the completed analysis from CMS which indicated a required set-aside amount of only $29,081.00 in order to protect the interests of Medicare. In that notification letter, counsel for the plaintiff inquired of defense counsel if the 9(i) needed to be changed before submission to the MWCC. In response, counsel for defendant Royal Indemnity stated that the company would not go forward with the settlement based on the CMS analysis of the reduced set-aside amount and instead offered the sum of $74,827.77 as a complete compromise of the case.

Feeling that the parties had reached a settlement previously, counsel for the

plaintiff filed a Petition to Enforce Compromise Settlement before the MWCC. The Commission, by Order of August 22, 2007, rejected the plaintiff's petition concluding that the settlement had been conditional and unenforceable. The Commission further stated that it is the only body authorized to approve worker's compensation settlements under state law and as the 9(i) settlement had never been submitted to them for approval, there simply was no settlement. The plaintiff has appealed that ruling to the State Circuit Court.

Thereafter, on September 17, 2007, the plaintiff filed the present action to enforce the settlement in the Circuit Court for the First Judicial District of Jones County, where she now resides, seeking actual damages of $102,239.00 and punitive damages of $1,000,000 against her employer, defendant Adventist, and defendant Royal Indemnity. The defendants, asserting the fraudulent joinder of defendant Adventist, timely removed the action to this court on October 24, 2007, on the basis of diversity jurisdiction, 28 U.S.C. § 1332, pursuant to the requirements of 28 U.S.C. § 1446. The plaintiff filed her motion to remand on November 16, 2007, and the matter is now ripe for resolution.

## STANDARD OF REVIEW - REMAND

The Fifth Circuit has consistently held that the party urging jurisdiction upon the district court bears the burden of demonstrating that the case is one which is properly before that court. *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Village Fair Shopping Co. v. Sam Broadhead Trust*, 588 F.2d 431 (5th Cir. 1979); *Ray v.*

*Bird & Son and Asset Realization Co., Inc.*, 519 F.2d 1081 (5th Cir. 1975). Even though this court has a limited jurisdiction whose scope is defined by the constitution and by statute, "[w]hen a federal court is properly appealed to in a case over which it has, by law, jurisdiction, 'it has a duty to take such jurisdiction.'" *England v. Louisiana Medical Examiners,* 375 U.S. 411, 84 S. Ct. 461, 11 L.Ed.2d 440, 445 (1964) (other citations omitted). Chief Justice Marshall wrote in *Cohens v. Virginia*, 19 U.S. 264, 5 L.Ed. 257, 291 (1821), "It is true that this court will not take jurisdiction if it should not; but it is equally true, that it must take jurisdiction if it should."

**<u>Improper/Fraudulent Joinder</u>**

"The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). The removing party must show either that there is no reasonable "possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *Id.* at 549;(*citing Keating v. Shell Chemical Co.*, 610 F.2d 328 (5th Cir. 1980); *Tedder v. F.M.C. Corp. et al*, 590 F.2d 115 (5th Cir. 1979); *Bobby Jones Garden Apts. v. Suleski*, 391 F.2d 172 (5th Cir. 1968); *Parks v. New York Times Co.*, 308 F.2d 474 (5th Cir. 1962)(*cert. denied*, 376 U.S. 949, 84 S. Ct. 964, 11 L. Ed. 2d 969 (1964)))

This court must refer to the allegations made in the original pleading to determine whether the plaintiff can make out a viable claim against the resident

defendant, Magco. *See Tedder v. F.M.C. Corp.*, 590 F.2d at 116; and *Gray v. U. S. Fidelity and Guaranty Co.*, 646 F. Supp. 27, 29 (S.D. Miss. 1986). Those allegations must be construed most favorably to the plaintiff as the party opposing removal, resolving all contested issues of fact and ambiguities in the law in favor of the plaintiff. *B. Inc.*, 663 F.2d at 549. *See also*, *Bobby Jones Garden Apts.*, 391 F.2d at 177; and *Carrier v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990).

When considering whether a non-diverse defendant has been fraudulently joined to defeat diversity of citizenship jurisdiction, courts may "pierce the pleadings" and consider "summary judgment-type" evidence such as affidavits and deposition testimony. *See Cavallini v. State Farms Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995). Conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that a defendant was not fraudulently joined. *See Badon v. RJR Nabisco, Inc*. 224 F.3d 382, 392-93 (5th Cir. 2000); and *Peters v. Metropolitan Life Ins. Co.*, 164 F.Supp.2d 830, 834 (S.D. Miss. 2001). Removal is proper if the plaintiff's pleading is pierced, and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against Adventist. *Badon*, 224 F.3d at 390.

Regarding piercing the pleadings in an improper joinder case, the Fifth Circuit has held that

> A court may resolve the issue in one of two ways. The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts

> that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

*Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)(*en banc*)(internal footnotes omitted)(*cert. den.* 125 S.Ct. 1825, 73 USLW 3372 , 73 USLW 3612 , 73 USLW 3621 (U.S. Apr 18, 2005) (NO. 04-831)). However, the Fifth Circuit went on to caution,

> While the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court, we caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant. We emphasize that any piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.

*Id.* at 573-74 (internal footnotes omitted).

## **ANALYSIS**

The defendants do not contend that there is outright fraud in the plaintiff’s pleadings but only that there is no reasonable basis upon which the plaintiff can recover against Adventist in state court. This argument is p remised upon the defendants’ assertion that Adventist was insured by Royal Indemnity and thus the negotiation of the proposed settlement was the sole responsibility of Royal.

The plaintiff’s argument in favor of remand is that a cognizable cause of action

exists against the non-diverse defendant, Adventist, and that the case is one which arises under the worker's compensation laws of Mississippi, the enforcement of which lies exclusively within the purview of the state courts and that the case is nonremovable pursuant to 28 U.S.C. § 1445(c).

This case is unusual in that there are no reported decisions dealing with a factual scenario similar to this where one seeks to enforce a workers' compensation settlement by institution of a bad faith suit prior to a final adjudication of the approval of the settlement agreement. To assist the court in resolution of the issues, it will look to analogous case law for guidance.

The first question is whether Adventist is properly joined in this action to defeat diversity jurisdiction. The court notes, even though the parties do not cite to *Luckett v. Mississippi Wood, Inc.*, 481 So.2d 288 (Miss. 1985), that the Mississippi Supreme Court recognized that an aggrieved employee may bring a bad faith refusal action, independently of the underlying workers' compensation claim, against his employer or his employer's workers' compensation carrier. *Id.* at 290. This holding has been relied upon in a number of federal court decisions, including *Shepherd v. Boston Old Colony Ins. Co.*, 811 F.Supp. 225 (S.D.Miss. 1992), and *Butler v. Nationwide Mut. Ins. Co.*, 712 F.Supp. 528 (S.D.Miss. 1989). These cases hold that an employee may sue his employer for bad faith *if the employee can establish the requisite elements of bad faith*. All of these cases deal with a situation where an allegedly valid claim has been rejected or where there allegedly was no justifiable reason for delaying the payment of a valid claim. None of the cited cases deal with a bad faith case against the employer and the carrier for failure to consummate an alleged proposed settlement by the carrier.

Nevertheless, in order to establish a bad faith claim against an employer, the employee must prove that the employer intentionally participated in a refusal to pay, or interfered with the payment of, a claim that was due *and* that the employer had no reasonable or arguable basis for its refusal or interference in the timely payment of the claim. *See Blakeney v. Georgia Pac. Corp.*, 151 F.Supp.2d 736, 741 (S.D.Miss. 2001) (citing *Blue Cross & Blue Shieldof Miss., Inc. v. Campbell*, 466 So.2d 833, 847 (Miss. 1984)).

As stated, neither of the parties address this argument. The defendants would have this court reject the motion to remand on the basis that: 1) the parties did not reach a settlement; 2) the order of the MWCC confirms this; and 3) that the present case does not arise out of a worker's compensation claim. Of course, the plaintiff vehemently argues that this is nothing more than a garden variety worker's compensation case, while failing to inform the court that the MWCC has ruled against her contention that the parties reached a settlement or that she has appealed that ruling.

In reviewing the plaintiff's Complaint, the court finds that the plaintiff has failed to present any specific allegations of fact to support a bad faith claim against Adventist. It appears from the pleadings that Royal Indemnity handled and negotiated Morris' workers' compensation claim in its entirety, and Adventist had no role in regard to the claims handling, payment activities and the subsequent proposed settlement which the plaintiff seeks to enforce. For this reason, it appears that Morris has no viable claim against Adventist and Adventist's citizenship must be disregarded for jurisdictional purposes.

This conclusion is supported by *Toney v. Lowery Woodyards*, 278 F.Supp.2d 786 (S.D.Miss. 2003), and *Hodges v. The Hartford Ins. Co.*, 2006 WL 1983889 (N.D.Miss., July 12, 2006). In Toney, Judge Lee recognized that the Mississippi Workers' Compensation Act requires employers to secure workers' compensation coverage and, once this insurance is purchased, there can be no cause of action for bad faith against the employer without evidence that the employer actively participated in the acts alleged to constitute bad faith. 278 F.Supp.2d at 794.

The employer in that case, which was the only non-diverse defendant, offered an affidavit, unrefuted by the plaintiff, establishing that it had no active role in handling or adjusting the underlying workers' compensation claim. *Id*. at 791. Based on this undisputed evidence, the court concluded that the plaintiff had no viable basis for recovery against the employer and thus denied a motion to remand the case to state court and dismissed the non-diverse defendant. *Id*. at 794. Judge Pepper of the Northern District followed Judge Lee's reasoning in disposing of a similar issue in *Hodges*.

This conclusion does not conflict with the premise of joint liability prescribed in *Rogers v. Hartford Accident & Indemnity*, 133 F.2d 309 (5th Cir. 1998). Indeed, this court has recently held that, in order to find liability against an employer, independent acts of bad faith or affirmative allegations of an act in conspiracy with the carrier must be demonstrated. *Garner v.Toys R Us,* 2006 U.S. Dist. Lexis 47088. A careful review of the Complaint filed in State court reveals that there are no such "independent acts of bad faith or affirmative allegations of an act in conspiracy with the carrier" against Adventist to support a finding that there is a reasonable basis to predict that Adventist

could be liable to the plaintiff on the allegations of the Complaint. Further, any reliance on joint and several liability and the fact that Adventist was represented in the Worker's Compensation proceedings by the same attorney as Royal Indemnity as the basis to defeat a dismissal of Adventist for improper joinder is insufficient to defeat removal. *See Null v. Zurich American Insurance Co.,* Civil Action No. 2:06cv237KS-MTP (Starrett, J., S.D. Miss. August 2, 2007).

Lastly, the defendants argue that this case is not one which arises under the workers' compensation laws of Mississippi making it nonremovable under 28 U.S.C. § 1445(c). Mississippi law recognizes the viability of a bad faith claim against a workers' compensation carrier for intentional torts. *See Southern Farm Bureau Casualty Ins. Co. v. Holland*, 469 So. 2d 55 (Miss. 1984). Such a case is removable to this court because it does not involve issues of ultimate compensability of the underlying workers' compensation claim. There must first be an order of compensation entered by the MWCC before one can proceed on such a bad faith claim. One could argue that a bad faith claim "arises" under the workers' compensation laws and thus be nonremovable, but that would be a parsing of words and is not in line with the settled law. Arising under the workers' compensation laws means affecting the issue of compensability in the first instance. Such is not the province of this court.

Strictly speaking, a motion to enforce a settlement agreement would not normally affect the merits of the underlying claim and could be properly brought as a separate and independent claim. Based on the above analysis, so could a bad faith claim. But such a bad faith claim could not be brought until the ultimate issue of compensability had been determined by the MWCC. The defendants would have this court rule that

such has been accomplished by virtue of the MWCC order denying the petition to enforce the settlement and that such is *res judicata* in regard to this suit. That argument ignores that the plaintiff has appealed that MWCC ruling to the State Circuit Court.

The MWCC has ruled that the plaintiff's on the job injuries are compensable as evidenced by the previous orders requiring the payment of temporary total disability. There is no final adjudication on her permanent damages, however. Thus, the case is still open in the MWCC and any bad faith suit is premature. Likewise, a suit to enforce a settlement agreement not approved by the agency whose approval is required by State law, cannot be pursued. Thus, any suit to enforce the proposed settlement agreement in this forum or any other is premature until the final adjudication of the issues presented to the MWCC by the plaintiff's petition to enforce the 9(i) settlement.

IT IS THEREFORE ORDERED AND ADJUDGED that defendant Adventist Health Center is dismissed as being improperly joined and the plaintiff's Motion to Remand **[#4]** is Denied.

IT IS FURTHER ORDERED AND ADJUDGED that the present suit is premature in light of the pending appeal of the underlying MWCC Order and thus it is Dismissed without prejudice and that all other pending motions are denied as moot. A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 23rd day of January, 2008.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE